Good morning, your honors. I'm Jeffrey Baird, representing Dawn Samples. Dawn Samples has a complicated case. She has demonstrated a personality disorder, post traumatic stress disorder, and other personality difficulties rooted in a history of sexual abuse, neglect, and abandonment. One of the doctors who analyzed this personality problem best was James Wall, an examining physician whose two opinions were actually adopted by the ALJ. But the ALJ didn't quite grasp all the limitations that Dr. Wall suggested were there. One important one is dealing with authority figures, or people in positions of power that she may react to with hostility. Dr. Wall limited her moderate to marked limitation in responding to receiving instructions and criticism from supervisors. The supervisor is an important element of that limitation, and that's found in the analysis of the personality by Dr. Wall. When the ALJ set the RFC, the ALJ did it in a very narrative fashion, this very lengthy RFC with many examples. The ALJ adopted one of the check boxes by Dr. Wall, and the which is moderate to marked limitation in interacting with coworkers. But the ALJ did not explain why he did not adopt the limitation on interaction, receiving instruction and criticism from supervisors, an authority figure of the sort Dr. Wall identified in his narrative analysis. Because of that, the RFC wasn't complete. And because of that, the hypothetical questions were not complete, so the vocational expert didn't have a good basis for... Can I just pursue that a bit? He found that she was unable to consistently follow detailed or complex instructions. Who would the instructions be coming from? Presumably they'd be coming from the supervisor. Okay. And so you don't think that that captures the essence of ability to follow instructions and accept criticism? No, because... Right, Your Honor. Dr. Wall limited moderate to marked receiving criticism and instructions from supervisors. And in his analysis of the personality, he identified difficulty with authority figures based on the history of sexual abuse, the history of sexual abuse. That limitation would be too vague. The precise limitation was the one marked by Dr. Wall. So are you relying entirely on the checklist or are you... The checklist and the narrative. And the narrative. The checklist in this case seems to be a component of the broader opinion evidence. And under the regulations, 404.15.27.F, the ALJ does not ignore checkboxes. The ALJ must consider the opinion evidence factually, front to back, as a whole. And here Dr. Wall seemed to be specifying trouble with authority figures, receiving instructions and criticism from supervisors. Did the ALJ in any way discredit Dr. Wall? No. And that's clear from his decision? Pardon me, Your Honor? That's clear from his decision? Correct. That's correct. He adopted some of the checkboxes, but not all without explanation. And the critical one here would be relating to authority figures. There are many examples in the evidence of doctors saying she's quite hostile, completely distraught, blaming, angry, angry, noncompliant, rocky course ahead, very angry and distraught, gets along better with me than with others. So she has this consistent problem of authority figures rooted in the personality. Well, that isn't all about authority figures. Being hostile or not getting along with anybody other than me doesn't necessarily reflect authority figures. It reflects difficulty in social interaction. And I think the hard question for me is looking at what the ALJ did say and recognizing that instructions customarily come from authority figures, is the requirement to encompass the limitations so broad as to basically tell the ALJ, whenever there's a box that's checked, make certain you include that language in your hypothetical question? Because the tenor of the limitations appears in a general fashion, at least, to be included within what was put to the vocational expert. How specific does that question have to be? Well, Dr. Wall was quite specific. He drew a careful line showing he wasn't bound by the form. He wanted to demarcate moderate to marked. Marked means precluded on a sustained basis. That we're taking as more than a casual indicator. He specifically indicated moderate to marked on that. So the supervisors and the difficulty with authority figures would be a problem. Also, Your Honor, the doctor was the one who said, gets along better with me than with other doctors. But it's also true she had trouble with the general stress of work dealing with any social interactions. She attempted work unsuccessfully and lost it due to inability to get along with the girls that she was officially watching over. And she had trouble with the public, with the work at the deli. She never really had a sustained work attempt, although she tried. They were unsuccessful due to the inability to sustain stress. So what are you asking us to do? Well, if you want to follow Dr. Nguyen. No, I'm not. I'm not. I'm not. What are you asking us to do? Well, the relief we're seeking would be at least remand for further proceedings. At what step? At step 5. It went to step 5, and the Commissioner did not produce evidence. So you're so he would on remand, he'd want to go back so that the ALJ can reform relate the hypothetical, or did he have to go back and reassess the RFC? Reassess the RFC. At the step 4. Yeah, prior to step 4 then. But reassess the RFC and then reassess the hypothetical questions. Did you happen to, were you the, did you attend the hearing with her? No. I was brought in at the appellate level. So nobody asked, so nobody, there was nobody there to reformulate the hypothetical to the ALJ to include this more specific? There was an attorney present. He did not do that. Under the rules. What's your sense if it were to go back and this added limitation were included? I think it would knock out the jobs. Because there's going to be some kind of supervisory interaction on most jobs. But I take it a VE would have to respond. If we're going to pursue that way of resolving the case. But the waiver doesn't really exist in social security hearings because they're inquisitorial. Certainly we have the Sims v. Apfel decision from the Supreme Court saying there's no waiver. What could be harmless? Well, here I think it is harmful because. That's what I was asking. Yeah. It's harmful because the problem, unique problems with authority figures. She got her supervisor and got fired from the one place. She had the problems taking orders. Did you want to save your? Oh, yes. I'll save two minutes for everybody. Before you get away, though, I'd like to ask you. On the form, the checklist, it appears to be a standard form. Whose form is that? It's taken from the Social Security Administration. It's used ordinarily at the state agency levels. So O.M.A.P. 729F, that indicates it came from the state. But it's a social. In other words, this isn't Dr. Wall's form. No. He used their standard form. But if you notice, he wrote on it by hand. I understand. I'm looking at it. I just want to know the provenance of the form. Thank you. Thank you. Good morning. Good morning. To begin with, Ms. Samples raised the issue of Dr. Wall's statement that she was predisposed to oversensitivity and anger in response to criticism in the workplace. Ms. Samples also raised the checkbox form earlier in his decision, in which he answered a compound question, Your Honor. That's why I was asking about the form. Yes. Whose form is it? This is actually the state form. There is a similar form for SSA that covers the same range of mental activities in the workplace. So what do we do with the compound question that's on a state form? Well... And what's supposed to happen? So every time that the doctors use that form and it's forwarded on to the Social Security Administration, it has no weight because it's compound? No. The weight of the checkboxes is to allow the ALJ to ensure that the doctor providing the narrative has considered all the relevant work activities that present itself in a workplace, in addition to determining the degree of severity of that. However, all of these work mental activities happen in combination at work. And so, therefore, the ALJ, after determining that the doctor properly considered all these factors, refers to the narrative to determine how those mental activities combine to impact her ability to perform work activities. Okay. But wouldn't you agree that it's an important distinction between dealing with the public, dealing with coworkers, and then ability to accept instructions or respond appropriately to criticism from supervisors? That's a whole different category. And if you can't get along with your immediate boss or bosses above that, wouldn't that be an important factor in assessing whether or not, A, to hire somebody, and B, therefore, to determine whether that person could be hired? It's a fact-specific inquiry, Your Honor. Well, it's not. What do you mean it's fact-specific? Well, in this particular case, to refer back to... We're talking about jobs and the general economy. So when you get down to the point of assessing whether or not there are going to be employment opportunities, it's not fact-specific. It's a question of whether or not, if the profile of the applicant includes an inability or a way to accept instructions or criticism from supervisors. That is a mental activity that would impact an ability to perform work activities. Or to get hired. Or to get hired. In this particular case, you mentioned earlier the restriction to no detailed instructions. By not... I didn't mention that. ...to counsel in counsel's argument. By eliminating the word supervisor from that restriction, the ALJ was actually broadening the restriction. Well, I don't think so. I didn't read the quote about instructions, because that's what he said. I was looking at the hypothetical question, and it says, she's unable to consistently follow detailed or complex instructions. Okay, yes, that would come from supervisors. Are you suggesting that that is enough to encompass what he said, what was checked on the box then? In terms of the instructions, that wasn't the appropriate limitation in this particular case, yes. In light of the narrative assessment provided by Dr. Wall that provided the specifics behind his thought process for the mental activities assessment. The checklist can be seen almost as a doctor's thought process in reaching the narrative, which is his distillation of all of these activities and degree of impairment in these activities. A further limitation is not supported by this record. Dr. Gail Wall noted Ms. Sample's ability to remember and understand instructions. Dr. James Wall also noted in his examination her ability to remember and understand instructions. When explaining how this limitation would impact her ability, Dr. Wall explained that it resulted in a predisposition to oversensitivity and anger in response to criticism from supervisors. Therefore that narrative provided a more specific explanation of what he was thinking as he was going through the mental activity checklist. Okay, and then... How does that get reflected in the hypothetical question? Well, he addressed it by limiting the situations that would trigger that susceptibility. Most of Ms. Sample's in one of her hearings was questioned about her problems with authority. And she stated, when I get under stress, I just don't deal with things very well. And so when looking at the record as a whole, the ALJ needed to determine how best to accommodate that restriction. In this case, based on the evidence as a whole, it was appropriate to address, such as dealing with the public, dealing with... I'm looking in particular about this oversensitivity to criticism, whether it's from an authority figure, a supervisor, anybody. And I'm not sure, as I look at the hypothetical question, what there incorporates the hypersensitivity to criticism. I mean, that may be a subset of having difficulty getting along with people, but it's a significant subset in the workplace because you can expect direction and sometimes negative feedback if you're not going in the right direction. And to say that someone has, is unable to consistently engage in ongoing cooperative teamwork endeavors, does that fairly embrace problems with criticism? Well, the RFC, or the residual functional capacity as a whole, not merely her ability, her restriction with ongoing teamwork. I mean, I'm looking at the hypothetical question, and I really kind of merged the RFC and the hypothetical question together because the impact here is what question is put to the vocational expert, and how does the V.E. respond to the assessment. And I ask you to tell me what it is within the hypothetical question that embraces or reflects this particular problem she has with criticism or supervision. Well, for example, one of the things that Ms. Samples testified stressed her out was dealing with the public at her Safeway job. So the restriction No, but see, that's a somewhat different concern. And yes, there's something in the question with regard to difficulty in dealing with the public. But we're focused here on a subset, and it may just be a subset. That might be your answer. But I don't see anything in the hypothetical question that really reflects this concern or this limitation about dealing with criticism. Well, it's a susceptibility to an internal response, a susceptibility to oversensitivity, to anger. There's a distinction between that and an inappropriate response to criticism in the workplace. And therefore, the fashioning of the residual functional capacity in this way appropriately addressed it in this particular case, because it is a distinction between her reaction to it, her internal reaction to it and her external reaction to it. And that is reflected in her testimony. She is, she testified at one point about the fact whether or not she, when she was talking about her past work at the Mills Casino, she was explaining that she was oversensitive. And the ALJ asked whether or not she responded inappropriately. And she said, well, at first she said no, and she qualified it with a later example, but explained that she responded inappropriately in that circumstance because she was stressed out due to other aspects in the workplace. That particular job has been, was characterized as the vocational act for a semi-skilled work, which is just one way in which the representative occupations that the ALJ relied on would be less stressful, therefore would not transform the susceptibility or trigger the susceptibility into a reaction. Okay. Thank you. Thank you. Your Honor, she, my opponent referenced Dr. Gale Wall. Dr. Gale Wall found a global assessment of functioning of 50, which is serious impairment in occupational functioning that would be consistent with disability. A number of doctors made findings of the global assessment of functioning in the 40s, again, serious impairment in occupational functioning. Her treating physician, plaintiff's treating physician Dr. Nguyen from the North Bend Clinic found her unable to withstand work stress due to her combination of impairments. Although he didn't articulate much on his opinion form, it was resting on the shoulders of all of the North Bend Clinic progress notes and specific advice from the OHSU doctor who said, yes, she has fibromyalgia and a synovitis of some kind, as well as the earlier doctors like Dr. Park, who had treated her at North Bend, found her disabled by a combination of mental and physical interacting pain and mental impairments. So there is substantive evidence there of global disability. The Commissioner's failure at Step 5, which I've alleged here, if we follow the logic of the D'Eustassio versus Shalala holding, the failure at Step 5 would be enough to pay the case. That is, where the Commissioner has the burden of producing evidence and fails to do so, the court has discretion to pay the claim. And I suppose that comes from a syllogism. Because the ALJ is an inquisitor with great authority and power to develop the case and find good reasons to reject each piece of evidence, and the ALJ failed to do that, one can only infer bad reasons exist and that the case should be paid. Thank you very much. Thank you. Thank you both, counsel. All right. Samples versus Astruz submitted.
judges: Fisher, Paez, Clifton